UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


GARY MOORE,                                          Case No.: 1:14-CV-00354-AC

                        Plaintiff,                   OPINION & ORDER

            v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

                        Defendant.
_____

ACOSTA, Magistrate Judge:

      Plaintiff Gary Robert Moore ("Claimant") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, the court affirms the Commissioner's decision.

OPINION AND ORDER - 1                                               [RMD]

*Procedural Background*

Claimant filed an application for SSI on February 17, 2011, alleging disability due to chronic obstructive pulmonary disease ("COPD"), peripheral neuropathy, low back pain, and carpal tunnel syndrome beginning September 4, 2008. (Tr. at 22, 24.) The Commissioner denied Claimant's application initially and on reconsideration. (Tr. at 22.) Claimant appeared at a hearing before Administrative Law Judge Steve Lynch ("the ALJ") on December 21, 2012, in Portland, Oregon. (Tr. at 22.) The ALJ issued an order finding Claimant was not disabled on or before January 11, 2013, the date the ALJ released his written opinion. (Tr. at 33.) Claimant appealed to the Appeals Council and introduced new evidence not available to the ALJ, but the Appeals Council affirmed the ALJ's decision, making it the Commissioner's final decision. Claimant now seeks review of the Commissioner's unfavorable disability determination.

*Factual Background*

Claimant was born on August 3, 1959, and was 52 years old on his alleged onset date. (Tr. at 77.) He has a tenth-grade education and worked for most of his life as a tree trimmer. When he filed his application for SSI, Claimant lived in Portland, Oregon. (Tr. at 88.) However, before he could appear at the administrative hearing, Claimant moved to Iron Mountain, Michigan, following his mother's death. (Tr. at 610.)

Claimant has a history of several serious medical impairments including COPD, carpal tunnel syndrome, low-back pain, and neuropathy. Despite Claimant's respiratory symptoms caused by his COPD, he still smoked cigarettes on a regular basis. (Tr. at 278.) Doctors consistently urged Claimant to quit smoking, but was unable to stop. (Tr. at 278.) However, chest x-rays and respiratory-function testing showed Claimant's COPD improved when treated by medication.

[RMD]

Claimant also experiences chronic low-back pain and neuropathic pain in his legs. (Tr. at 277.) He generally did not complain of gait problems or weakness in his extremities, but he experienced nerve pain in his legs and back. Claimant's carpal tunnel also caused persistent pain in his wrists. (Tr. at 294-95.) His pain symptoms improved when treated with Vicodin. However, upon moving back to Michigan, Claimant's carpal tunnel syndrome and neuropathic pain worsened significantly. (Cl.'s Opening Br., Ex 1.)

I.  The ALJ's findings

The ALJ engaged in the five-step "sequential evaluation process for evaluating SSI claims. 20 C.F.R. § 416.920. The Claimant bears the burden of proof at steps one through four, but the burden of production shifts to the Commissioner at step five to identify jobs existing in significant numbers in the national economy that the claimant can perform despite his or her residual functional capacity, age, education, and work experience. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4).

*A.  Steps One and Two*

At step one, the ALJ determined Claimant had not engaged in substantial gainful activity ("SGA") since his onset date. (Tr. at 24.) Although Claimant worked for the Veterans Administration ("VA") after his onset date, he did so with "special accommodations." (Tr. at 24.) Because the special accommodations allowed him to perform work he otherwise could not, this activity did not constitute SGA. (Tr. at 24.)

At step two, the ALJ determined Claimant had three severe impairments: (1) COPD; (2) peripheral neuropathy; and (3) low-back pain. (Tr. at 24.) The ALJ also discussed Claimant's carpal tunnel syndrome, repeated dislocation of his right shoulder, and right arm pain, but determined they

[RMD]

were not severe. (Tr. at 24-25.) Regardless, the ALJ included functional limitations in Claimant's RFC on account of these non-severe impairments. (Tr. at 25.)

### B. Step Three

At step three, the ALJ concluded Claimant "does not have an impairment or combination of impairments that meets or medically equals" those listed in pertinent regulations ("the Lists"). (Tr. at 25.) In reaching that conclusion, the ALJ determined Claimant's low-back pain was not severe enough to equal the lists because there was no evidence of nerve-root compromise. (Tr. at 25.) The ALJ also concluded Claimant's COPD did not meet Listing 3.02 because he did not have "the required FEV or FVC values" and did not suffer "impairment of gas exchange." Finally, the ALJ determined Claimant's peripheral neuropathy did not equal the impairments in the Lists because "there is no significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements . . . ." (Tr. at 25.)

### C. Residual Functional Capacity

In the ALJ's articulation of Claimant's Residual Functional Capacity ("RFC"), the ALJ concluded Claimant had the ability to perform light work after his onset date subject to several functional limitations. (Tr. at 25-26.) The ALJ concluded Claimant: (1) could stand and walk for only three hours per day; (2) could not climb ladders, ropes, or scaffolds; (3) could not work at unprotected heights; (4) was limited to "no more than occasional climbing of ramps and stairs;" (5) could only occasionally stoop, crouch, kneel, and crawl; (6) could only occasionally reach overhead or lift with his dominant right arm; and (7) was required to avoid exposure to noxious fumes, odors, and "extremely humid or extremely cold environments." (Tr. at 26.) In making this RFC determination, the ALJ considered the credibility of each witness on the record.

OPINION AND ORDER - 4                                                                    [RMD]

First, the ALJ considered Claimant's credibility. (Tr. at 27.) Although the Claimant introduced some objective evidence to support his alleged symptoms, the ALJ found Claimant "only partially credible." (Tr. at 27.) According to the ALJ, he partially rejected Claimant's credibility because: (1) Claimant's activities of daily living were inconsistent with the alleged severity of his symptoms; (2) Claimant had a poor work history which suggests he lacked the will to work; (3) Claimant's medical records, including objective medical testing, showed significant improvement in his symptoms in the time immediately preceding the administrative hearing; and (4) Claimant demonstrated drug-seeking behaviors. (Tr. at 27-28.)

Second, the ALJ considered the credibility of the physicians who contributed opinions to the medical record. Although the ALJ made credibility determinations for five doctors, only the credibility of Claimant's treating physician, Dr. James Bane, MD ("Dr. Bane") is relevant to the court's analysis in this opinion. Dr. Bane gave his opinion of Claimant's ability to work in two parts. The first was his statement on an application to receive a discounted "Honored-Citizen" transit pass. (Tr. at 531-32.) The ALJ gave this opinion "little weight" because "[t]he criteria for the issuance of a disability transportation pass do not correspond with those required for the issuance of federal disability." (Tr. at 29.) Dr. Bane's second opinion came in the form of a "check-box" letter written by Claimant's attorney. (Tr. at 597-98.) In the letter, Claimant's attorney briefly describes Claimant's symptoms and then asks Dr. Bane to check "yes" or "no" below two questions about Claimant's ability to work. (Tr. at 597-98.) Dr. Bane indicated he did not agree with the statement that "symptom's of [Claimant's] peripheral neuropathy and COPD limit use of his lower extremities to standing, walking and sitting no more than two hours of an eight-hour workday," but he agreed that Claimant's "various conditions likely [] limit his exertional ability such that he would not be

[RMD]

likely to sustain work-like activity for eight hours and would more than likely be limited to five hours of activeness or less per day at his own pace." (Tr. at 598.) The ALJ again assigned "little weight" to this opinion because it was "not supported by any written rationale from Dr. Bane. He simply checked a box in a letter written by the claimant's attorney." (Tr. at 29.) The ALJ continued, "[t]he opinion does not square with the assessment of Dr. Nelp who reviewed the complete medical record." (Tr. at 30.)

In lieu of accepting Dr. Bane's opinion, the ALJ relied heavily upon, and gave "great weight" to, the opinion of impartial medical expert Wil Nelp, M.D. ("Dr. Nelp"). (Tr. at 29.) After reviewing Claimant's medical records, Dr. Nelp testified that, in his opinion, Claimant was capable of performing light work subject to exertional limitations similar to those ultimately reached by the ALJ. (Tr. at 29.) Dr. Nelp opined Claimant could lift ten pounds frequently and twenty pounds occasionally, but could not climb ropes, ladders, or scaffolds. (Tr. at 29.) The ALJ gave Dr. Nelp's opinion great weight because it was "consistent with the overall medical record, including significant but improving spirometry and very normal EMG results." (Tr. at 29.) Moreover, the ALJ found Dr. Nelp's analysis persuasive because it was consistent with the assessments of Dr. McAuliffe and the state-agency medical consultant. (Tr. at 29.)

Third, the ALJ considered the credibility of Claimant's third-party lay witness and father, Walter Moore ("Mr. Moore"). (Tr. at 30.) Mr. Moore testified that Claimant could walk only short distances and often stops to use his inhaler. (Tr. at 30.) However, Mr. Moore testified that Claimant was capable of robust activities of daily living, including doing laundry, preparing meals, mowing the lawn, and cleaning. (Tr. at 30.) The ALJ fully credited Mr. Moore's testimony to the extent he testified about Claimant's activities of daily living. However, he gave "little weight" to Mr. Moore's

OPINION AND ORDER - 6                                                    [RMD]

testimony regarding Claimant's symptoms because it was based in large part on Claimant's "subjective pain complaints and statements regarding the alleged symptoms and limitations." (Tr. at 30.)

### D. Step Four

At step four, the ALJ found Claimant was incapable of performing past work as a tree-trimmer because Claimant could not perform a job requiring "heavy" work. (Tr. at 32.)

### E. Step Five

At step five, the ALJ determined that, considering Claimant's age, education, work experience, and RFC, Claimant could perform jobs that exist in significant numbers in the national economy. (Tr. at 32.) Based on the testimony of the Vocational Expert ("VE"), the ALJ determined Claimant's RFC allowed him to perform work as a "food assembly" worker, a "laundry folder," and a "paper sorter recycler." (Tr. at 32.) Because Claimant could perform work in the national economy, the ALJ held Claimant was not disabled under the SSA. (Tr. at 33.)

### Discussion

Claimant argues the court should reverse the decision of the ALJ because: (1) there is a reasonable probability that newly admitted evidence would have altered the ALJ's determination; (2) the ALJ erred by rejecting the opinion of Claimant's treating physician, Dr. Bane; (3) the ALJ's determination Claimant could stand and walk only three hours per day is unsupported by substantial evidence; and (4) the ALJ erred at step five by not clarifying discrepancies between the VE testimony and the Dictionary of Occupational Titles. After reviewing the parties briefs and the record, the court affirms the decision of the ALJ.

[RMD]

I.  New Evidence on the Record

Claimant argues his case should be remanded for further consideration of new evidence material to his claim.  From October 2012 to May 2013, Claimant was treated at the VA Medical Clinic in Iron Mountain, Michigan.  While being treated in that facility, doctors diagnosed him as having worsening symptoms of COPD and carpal tunnel syndrome.  Because most of his treatment in Michigan occurred after the administrative hearing, he could not submit the associated records to the ALJ.  After the ALJ released his decision, Claimant requested review from the Appeals Council and submitted the new medical records for its consideration.  The Appeals Council considered some, but not all, of the newly admitted evidence and declined to reverse the ALJ's decision.  Claimant now asks the court to admit his new evidence into the record and remand his claim for further consideration.

The Social Security Act provides that the court may remand a social security claim "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).  In the Ninth Circuit, evidence is "material" if there is a "reasonable probability that the new evidence would have changed the outcome of the [Commissioner's] determination had it been before him."  *Booz v. Sec'y of Health and Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1983).  The new evidence cannot relate to a tangential issue or a time frame not originally considered by the ALJ.  Instead, it must bear "directly and substantially in the matter in dispute," and the new evidence must demonstrate the claimant was disabled "at and before the ALJ [h]earing."  *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (quoting *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)).  Further, as the statute makes clear, the claimant must have "good cause" for not introducing the evidence at the

OPINION AND ORDER - 8                                                              [RMD]

outset of his or her claim.  42 U.S.C. § 405(g).

Here, Claimant has not met his burden under § 405(g).  With the exception of one record which predates the ALJ's decision, Claimant fails to show the new evidence is material to the Commissioner's administrative determination.  Of the new evidence Claimant submitted, the records that show deterioration in Claimant's carpal tunnel syndrome are dated May 29, 2013, and July 15, 2013.  The entry dated July 15, 2013, shows that "[r]ight carpal tunnel syndrome is increasingly bothering the patient."  However, this entry in Claimant's medical records is not probative of his condition "at and before the ALJ [h]earing" because Claimant' doctor does not indicate that Claimant's symptoms were aggravated during a time-period at issue in the ALJ's decision.  As a result, the bulk of Claimant's new evidence is not material to the Commissioner's final decision at issue in this case.

Only one record predates Claimant's administrative hearing and the ALJ's decision.  In that entry, dated October 22, 2012, Claimant's doctor describes a "pulmonary function test" and a "bronchodilator challenge," which showed "moderately severe airflow limitation" that was significantly improved upon administration of "inhaled bronchodilators."  (Pl.'s Opening Brief, Ex 1 at 6.)  However, this medical record was already submitted for the ALJ's consideration.  (Tr. at 540.)  Therefore, it is not "new evidence" which would entitle Claimant to a remand under § 405(g).  Because Claimant fails to meet his burden under § 405(g), the court declines to remand Claimant's case on because of "newly admitted" evidence.

II.  Weighing the Opinion of Dr. Bane

Claimant requests the court remand for an award of benefits because the ALJ "improperly rejected the opinion of [Claimant's] treating physician," Dr. Bane.  The Commissioner maintains that

OPINION AND ORDER - 9                                                    [RMD]

the ALJ committed no error in assigning credibility to Claimant's medical sources and, to the extent the ALJ erred, it was harmless. The court agrees with the Commissioner, and will not reverse the ALJ's decision on this basis.

> The ALJ must "thoroughly justify" the decision to reject the opinion of certain physicians:
>
> Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.

*Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). In addition, courts afford greater weight to the opinion of examining physicians than those of non-examining physicians. *Id*.

Where a treating doctor's opinion is uncontroverted on the record, the court generally gives it controlling weight. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Id*. If, however, a treating or examining physician's opinion contradicts that of another doctor on the record, the ALJ may reject that physician's opinion on the basis of specific and legitimate reasons supported by substantial evidence. *Id*. Moreover, an ALJ "need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id*.

Here, Dr. Bane provided two medical opinions, and the ALJ lawfully rejected the credibility of both. Dr. Bane first provided a medical opinion in conjunction with Claimant's application for an "Honored Citizen" transit pass. In that application, Dr. Bane provided his contact information and checked a box which indicates Claimant suffers from a "permanent" disability "due to illness,

congenital malfunction or other incapacity that substantially limits one or more major life functions."
(Tr. at 532.) In a section which asks for a specific description of the applicant's disability, Dr. Bane
wrote "COPD" and "Peripheral neuropathy." (Tr. at 532.) Dr. Bane declined the form's suggestion
he attach a description of Claimant's disabling conditions on an official letterhead. The ALJ rejected
this first opinion because "[t]he criteria for the issuance of a disability transportation pass do not
correspond with those required for the issuance of federal disability." (Tr. at 29.)

Claimant argues that the ALJ may not reject the credibility of a medial opinion merely
because it was obtained for another purpose. In *Riddick v. Chater*, the Ninth Circuit held that "in
the absence of other evidence to undermine the credibility of a medical report, the purpose for which
the report was obtained does not provide a legitimate basis for rejecting it." 157 F.3d 715, 726 (9th
Cir. 1998). However, the ALJ in this case did not reject Dr. Bane's opinion because it was obtained
for a purpose other than his SSI application. The ALJ rejected Dr. Bane's first opinion because it
is not probative of whether Claimant is disabled as that term is defined by the SSA. The ALJ
correctly observed that the criteria for issuance of an "honored citizen" transportation pass "do not
correspond with those required for the issuance of federal disability." In making that observation,
the ALJ was not rejecting the truth of Dr. Bane's representations to Trimet. Instead, he was merely
reasoning that, even if completely credited as true, the Trimet application does little to support
Claimant's contention that he is disabled under the SSA standards. Because it was largely irrelevant
to the ALJ's analysis, the ALJ did not err by giving Dr. Bane's first opinion "little weight."

Dr. Bane's second opinion came in the form of a letter prepared by Claimant's attorney, in
which the attorney briefly described Claimant's impairments and asked Dr. Bane to check next to
"yes" or "no" below two question. The first question, under which Dr. Bane checked "no" read: "In

your opinion, would symptoms of [Claimant's] peripheral neuropathy and COPD limit use of his lower extremities to standing, walking, and sitting no more than two hours of an eight-hour workday?" The second question, below which Dr. Bane checked "Yes" read: "In your opinion, is a combination of [Claimant's] various conditions likely to limit his exertional ability such that he would not be likely to sustain work-like activity for eight hours and would more than likely be limited to five hours of activities or less per day at his own pace?" The ALJ rejected this second opinion because it is inconsistent with the medical record as a whole and was "not supported by any written rationale from Dr. Bane. He simply checked a box in a letter written by the [C]laimant's attorney." (Tr. at 29.) It is not error for an ALJ to reject a physician's opinion when it is "brief, conclusory, and inadequately supported by clinical findings," particularly where that opinion is expressed in a "check-off" report that contains no explanation for the doctor's conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1995). Here, the ALJ did just that, and did not err in doing so.

Claimant nonetheless argues that the ALJ committed reversible error because, although Dr. Bane's second opinion was brief and conclusory, the letter certifies that Dr. Bane's conclusions were reached by reviewing Claimant's medical records. The court is not convinced. Claimant is correct that in the letter, Dr. Bane certified that he had "reviewed [Claimant's] medical record including Dr. Beadell's chart notes." That portion of the letter explains how Dr. Bane prepared to render his opinion on the "check-box" report, but it falls short of constituting an explanation and analysis of how Dr. Bane reached his conclusions. Because Dr. Bane did not sufficiently support his brief conclusions, the ALJ did not err in giving Dr. Bane's opinions "little credibility."

OPINION AND ORDER - 12                                                      [RMD]

III.  Claimant's Standing and Walking Limitations

Claimant argues the court should reverse the ALJ's decision because a portion of the RFC was unsupported by substantial evidence.  The court disagrees.  Among the exertional limitations the ALJ included in Claimant's RFC was the limitation that Claimant could walk and stand for only three hours during a normal eight-hour workday.  However, the medical opinions on record did not support such restrictive standing and walking limitations.  Dr. Nelp and the state-agency physicians opined that Claimant could stand and walk for six hours during an eight-hour workday.  Likewise, Dr. Bane opined Claimant was limited to "five hours of activities or less per day at his own pace." (Tr. at 598.)  Assuming, without deciding, the ALJ's determination was erroneous, this error is not reversible because Claimant does not demonstrate that he was in any way prejudiced by the ALJ adopting a more stringent limitation than was supported by the medical record.  Because the Claimant was not prejudiced by the ALJ's RFC finding, it does not constitute reversible error.

IV.  Step-Five Vocational Expert Testimony

The Claimant alleges the ALJ committed two errors on step-five, where the Commissioner has the burden of demonstrating the Claimant can perform jobs existing in sufficient numbers in the national economy.  First, Claimant argues the ALJ failed to clarify discrepancies between the VE's testimony and th Dictionary of Occupational Titles ("DOT").  Second, the Claimant contends the ALJ abused his discretion by providing his own testimony about the dictionary of occupational titles.

   *A. Clarifying Discrepancies Between VE testimony and the DOT*

The Claimant first argues the VE's testimony that an individual with Claimant's RFC could perform certain light work is inconsistent with the DOT.  According to Claimant, regulations define "light work" as requiring at least six hours of standing and walking during an eight-hour day.

[RMD]

Because the ALJ found Claimant could stand and walk only three hours per day, the VE's testimony that the "hypothetical individual" with Claimant's RFC could perform several "light-work" jobs was inconsistent with the DOT. Thus, according to Claimant, the ALJ committed prejudicial error by failing to clarify the discrepancy between the VE's testimony and the DOT.

The Commissioner typically relies on job descriptions in the DOT to aid in the analysis of whether a disability-benefits applicant can perform jobs in the national economy despite the applicant's functional limitations. *Johnson v. Shalala*, 60 F.3d 1428, 1434-35 (9th Cir. 1995). However, "[t]he DOT 'is not the sole source of admissible information concerning" job classifications and functional requirements. *Id.* at 1435. Where the DOT is lacking in detail, or does not contain a vocation potentially available to a claimant, a "VE, [vocational specialist], or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4P, *available at* 2000 WL 1898704, at *3 (2000). "Although there may be a reason for classifying the exertional demands of an occupation (as generally performed) differently than the DOT . . . the regulatory definitions of exertional levels are controlling." SSR 00-4P, at *3. Where the testimony of a VE conflicts with the job descriptions and categorizations found in the DOT, the ALJ has an affirmative duty to elicit testimony clarifying the discrepancy. SSR 00-4P, at *2.

Here, the ALJ determined Claimant had the functional capacity to perform light work subject to several functional limitations. Notably, the ALJ concluded Claimant could stand and walk for only three hours during an eight-hour work day. (Tr. at 26.) The VE testified that a hypothetical individual with Claimant's RFC could work as a food assembler, a laundry folder, and a paper sorter. The ALJ then fulfilled his duty under SSR 00-4P by asking the vocational expert whether his

testimony was consistent with the DOT. (Tr. at 66.) The VE replied that it was. The ALJ, therefore, did not neglect to clarify any discrepancy between the DOT and the VE testimony.

To demonstrate an discrepancy between the VE and the DOT, Claimant points to regulatory definitions for light work. In particular, Claimant points to the Code of Federal Regulations which defines light work as:

> Lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). The DOT contains a similar definition for light work:

> Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

*Dictionary of Occupational Titles*, Appx. C, *available at* 1991 WL 688702 (4th ed. 1991). Moreover, pertinent regulations provide that, to perform a "full range of light work" a claimant must be able to stand or walk "off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10 at *6 (1983). Claimant argues these definitions are clearly inconsistent with the VE testimony that a hypothetical person with Claimant's RFC could perform light work.

Although these definitions appear to conflict with the VE testimony at first glance, a careful reading of these regulations makes clear no such discrepancy is present. The regulatory definitions

OPINION AND ORDER - 15                                                        [RMD]

articulating the bounds of "light work," particularly those discussing the standing and walking requirements, are general definitions that are particularly applicable to Claimants found capable of performing a "full range" of light work; that is, work which includes those at more strenuous end of the exertional spectrum of "light work." Here, the ALJ did not find Claimant capable of performing a "full range" of light work. Instead, he found Claimant capable of performing only those light-work positions which involved significantly limited standing or walking. Therefore, the VE's testimony was not inherently inconsistent with DOT, and the regulations make clear that VEs are qualified experts capable of opining on whether a claimant's RFC allows them to perform certain jobs in the national economy. Thus, the ALJ did not err by inquiring further into the VE's testimony.

### B.  ALJ Testimony about the DOT

The Claimant next argues the ALJ abused his discretion by "providing information about the job market that is not contained in the" DOT. During the administrative hearing, the ALJ observed:

> [T]here are jobs that are listed as light by the DOT because of work pace and of frequency of production pace for example. They don't, not all jobs are listed as light require [] frequent lifting and carrying and there's certainly assembly jobs, small products assembly jobs that are listed as light where you never pick up more than eight or ten ounces probably.

(Tr. at 57)  According to Claimant, "the DOT and its companion publication[,] the *Selected Characteristics of Occupations*, do not list specific lifting, standing, and walking requirements for certain occupations.  Thus, the only source for the above-information must come from expert testimony and not from an ALJ."  (Pl.'s Opening Br. at 17) (emphasis original).

Claimant does not cite any legal authority for the proposition that an ALJ may not discuss his or her understanding of the DOT at an administrative hearing.  Regardless of whether the ALJ's statement constituted error, it is harmless.  The Claimant does not contend that the ALJ's statement

OPINION AND ORDER - 16                                              [RMD]

was in any way considered when rendering the Commissioner's final decision. Instead, the ALJ properly relied on the testimony of the VE that Claimant could likely perform at least three jobs existing in significant number in the national economy. Because the ALJ's statement did not affect his final decision, any error resulting from his "testimony" was harmless and not grounds to reverse the ALJ's decision.

### Conclusion

For the aforementioned reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 14th day of April, 2015.

JOHN V. ACOSTA
United States Magistrate Judge

[RMD]